**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ANDREA B.,**

**Plaintiff,**

**v.** **Case No. 25-CV-1319**

**FRANK J. BISIGNANO,**
*Commissioner of the Social Security Administration*,

**Defendant.**

---

# DECISION AND ORDER

---

## 1. Introduction

Alleging she has been disabled since July 3, 2021 (Tr. 198), Plaintiff Andrea B. seeks social security disability income under Titles II and XVI of the Social Security Act. After her application was denied initially (Tr. 93, 128–132) and upon reconsideration (Tr. 136, 139), a hearing was held before Administrative Law Judge (ALJ) Gary A. Freyberg on October 17, 2024 (Tr. 35–68). On November 1, 2024, the ALJ issued a written decision concluding that Plaintiff was not disabled. (Tr. 13–34.) After the Appeals Council denied Plaintiff's request for review on June 27, 2024 (Tr. 1–3), Plaintiff filed this action.

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 7) and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Plaintiff "has not engaged in substantial gainful activity since July 3, 2021, the alleged onset date." (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1522(a), 416.922(a). The ALJ concluded that Plaintiff has the following severe impairments: "migraines, degenerative disc disease of the cervical spine, osteoarthritis of the bilateral hands, right shoulder dysfunction, ill-defined myofascial pain syndrome, posttraumatic stress disorder (PTSD), generalized anxiety disorder, and major depressive disorder." (Tr. 18–19.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"),

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. *Id.* § 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not severe enough to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. *Id.* §§ 404.1520(e), 416.920(e). The ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. (Tr. 19.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making the RFC finding, the ALJ must consider all the claimant's impairments, including impairments that are not severe. *Id.* § 404.1545; 20 C.F.R. § 416.945. In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8P: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, 1996 SSR LEXIS 5, at *3 (July 2, 1996) [hereinafter SSR 96-8p]. The ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except

- Never climb ladders, ropes, or scaffolds;
- Occasionally climb ramps and stairs;
- Occasionally balance;

• Occasionally reach overhead with the right upper extremity (i.e., the claimant's dominant upper extremity), but frequently reach in all other directions;
• Frequently handle and finger with the bilateral upper extremities;
• Avoid concentrated exposure to atmospheric conditions, such as fumes, odors, dusts, gasses, and poorly ventilated areas;
• Avoid all use of dangerous moving machinery and exposure to unprotected heights;
• Limited to understanding, remembering, and carrying out no more than simple instructions;
• Limited to work involving only simple tasks;
• Limited to work involving occasional changes in the work setting;
• Limited to work involving no production rate or pace work, such as assembly line work, with no specific hourly production quotas (variably paced tasks and end of the day production quotas are permissible);
• Limited to occasional interaction with the public, coworkers, and supervisors; and
• Can work near and around others, but not engage in work that routinely requires cooperative effort with other coworkers.

(Tr. 21.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 28.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 28.) Representative jobs identified were

cleaner/housekeeper (DOT number 323.687-014), mail clerk (DOT number 209.687-026), and office helper (DOT number 239.567-010). (Tr. 29.) DOT refers to the Dictionary of Occupational Titles, which the ALJ relied on to determine Plaintiff's ability to perform certain jobs. 20 C.F.R. §§ 404.1566, 416.966. Therefore, he concluded that Plaintiff was not disabled.

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *Wagner ex rel L.D.R. v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R.*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

"The ALJ … has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). Failure to build an accurate and logical bridge is reversable error. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Resting a decision on serious factual mistakes is also reversable error. *Beardsley*, 758 F.3d at 837. Disability cannot be denied "solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (citing *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004); 20 C.F.R. § 404.1529(c)(2)). If reported symptoms are greater than objective medical evidence shows, an ALJ will consider several factors, including daily activities, treatment, and medication, to determine the symptoms' severity. *See* 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

Plaintiff alleges symptoms following a 2021 car crash related to post-concussion syndrome. (Tr. 441.) Symptoms include migraines, nausea, panic attacks, confusion, dizziness, depression, right arm and hand pain, and fatigue. (Tr. 299–311.)

Plaintiff argues that the ALJ committed three errors. (ECF No. 18.) First, the ALJ failed to evaluate Plaintiff's physical RFC per SSR 96-8p. (*Id.* at 2.) Second, the ALJ also failed to evaluate Plaintiff's mental RFC per SSR 96-8p. (*Id.* at 10.) Finally, the ALJ failed to properly evaluate Plaintiff's subjective allegations per SSR 16-3p. (*Id.* at 16.)

The Commissioner responds that the ALJ sufficiently considered Plaintiff's allegations about her subjective symptoms but found them inconsistent with the objective medical evidence. (ECF No. 25 at 3.) The Commissioner argues that substantial evidence supported the ALJ's reasoning. (*Id.* at 6.) The Commissioner also argues that the ALJ met the burden to minimally articulate the reasoning for the RFC. (ECF No. 25 at 6.)

The ALJ concluded that the Plaintiff's statements about the severity of her symptoms conflicted with the testimony and medical evidence in the record. (Tr. 25.) To support this conclusion, the ALJ gave three reasons. (Tr. 25.) First, no objective evidence supports Plaintiff's claims of disabling pain. (Tr. 25.) Second, Plaintiff's treatment for her symptoms was "relatively routine and conservative." (Tr. 25.) Third, Plaintiff's physical examinations have "generally been within normal limits." (Tr. 25.)

**4.1. Physical limitations assessed per SSR 96-8p**

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

"[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Listing conclusions contained within the RFC without

explaining how these conclusions were reached is reversable error. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing SSR 96–8p, at *7). "But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence." *Zatz v. Astrue*, 346 F. App'x 107, 111–12 (7th Cir. 2009).

#### 4.1.1. Handling limitations

The RFC limited Plaintiff to frequent handling and fingering. (Tr. 21.) It is unclear how the ALJ reached this conclusion because handling is never mentioned again. The ALJ cited hand tests Plaintiff completed that reached conflicting results. (Tr. 24–25.) Specifically, in 2023 a doctor assessed Plaintiff as having "full range of motion of the bilateral upper extremities" with "completely intact dexterity for both fine and gross motor movements." (Tr. 1441.) That same year a different doctor took X-rays of Plaintiff's hands and diagnosed her with "ill-defined myofascial pain syndrome" and carpometacarpal arthritis. (Tr. 1463.) Carpometacarpal arthritis is arthritis of the thumbs. Lorenzo Lucchetti, *What is Carpometacarpal Osteoarthritis? Everything to Know*, Med. News Today (May 23, 2023) https://www.medicalnewstoday.com/articles/carpometacarpal-osteoarthritis. The ALJ listed ill-defined myofascial pain syndrome and osteoarthritis of the bilateral hands as severe impairments. (Tr. 18.) But he never explained how he accounted for these diagnoses in relation to Plaintiff's ability to work.

The Commissioner suggests that, because the ALJ mentioned that the provider described Plaintiff's hand and arm pain as "ill-defined," he adequately explained why the RFC included frequent handling. (ECF No. 25 at 8.) Parroting a provider's note about ill-defined pain while citing an objective examination that showed a condition does not build a logical bridge between being able to frequently handle and having a pain syndrome and arthritis. The ALJ never explained how Plaintiff's allegations of disabling pain are inconsistent with these diagnoses. When evidence conflicts, the ALJ should describe how conclusions were reached. *See Zatz*, 346 F. App'x at 111–12.

The ALJ explained that Plaintiff's treating physician was unpersuasive because his opinions were based upon Plaintiff's subjective complaints only, contrasted with Plaintiff's reported daily activities, and conflicted with objective medical tests. (Tr. 26–27.) This sufficiently explains why the treating physician's opinion was not credited as a whole. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

But this explanation never mentions handling limitations specifically. And the doctor who diagnosed Plaintiff with ill-defined myofascial pain syndrome and carpometacarpal arthritis (Tr. 1463) was not her treating physician or a state agency medical consultant who reviewed Plaintiff's records (Tr. 80, 92, 105, 116). The ALJ only opined on the credibility of Plaintiff's treating physician and the state-agency medical consultants. (Tr. 26–27.) Not addressing the diagnosing doctor is particularly significant because the ALJ listed the two impairments as severe. (Tr. 18.) Broadly explaining why

Plaintiff's treating physician was not credible did not adequately explain how the ALJ determined Plaintiff could frequently handle.

Failure to describe how conflicting evidence about Plaintiff's hands was weighed is not harmless error because all the jobs the ALJ identified that Plaintiff can perform require frequent handling. *See* DOT 323.687-014 Cleaner, Housekeeping, 1991 WL 672783 (2016); DOT 209.687-026 Mail Clerk, 1991 WL 671813 (2016); DOT 239.567-010 Office Helper, 1991 WL 672232 (2016).

Because the ALJ failed to adequately explain why the Plaintiff was limited to frequent handling, and frequent handling is a requirement of all of the jobs that the ALJ concluded plaintiff could perform, remand is required so that the ALJ can explain how he determined Plaintiff's handling capabilities.

**4.1.2. Reading limitations**

The ALJ acknowledged Plaintiff's reports of difficulty reading due to nausea. (Tr. 22.) The ALJ also mentioned Plaintiff's ability to tolerate gaze stabilization training and her one-time report of an improved ability to read. (Tr. 24.) Gaze stabilization training is a physical therapy exercise designed to improve dizziness. *What is Gaze Stabilization, and How do Physical Therapists Use this Technique?*, Core 3 (last visited Sept. 17, 2026) https://core3pt.com/what-is-gaze-stabilization.

Plaintiff's self-reported difficulty reading is not inherently at odds with tolerating gaze stabilization well because the ALJ only mentioned that Plaintiff tolerated the therapy

once, not that Plaintiff's ability to read without nausea or dizziness improved. (Tr. 535.) It is unclear why the ALJ determined that Plaintiff did not have any limitations for reading—he never explained how Plaintiff's allegations of difficulty reading were considered. This does not adhere to the requirement that the ALJ "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, at *7.

Not addressing Plaintiff's reading limitations is material because each job the ALJ identified that Plaintiff can perform requires reading. *See* DOT 323.687-014 Cleaner, Housekeeping, 1991 WL 672783 (2016) (requires ability to read 95-120 words per minute); DOT 209.687-026 Mail Clerk, 1991 WL 671813 (2016) (requires ability to read at a rate of 190-215 words per minute); DOT 239.567-010 Office Helper, 1991 WL 672232 (2016) (requires ability to read at a rate of 190-215 words per minute). The Commissioner argues that it is dubious that a cleaner/housekeeper job would involve reading a few pages at a time, and Plaintiff only reported difficulty reading more than a few pages at a time. (ECF No. 25 at 9 (citing DOT 323.687-014 Cleaner, Housekeeping, 1991 WL 672783 (2016); Tr. 467).) Although not mentioned in the decision, Plaintiff was unable to tolerate a cognitive test that required "single word reading." (Tr. 1357.)

Failing to explain how these conflicting results were weighed is reversable error. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). ("[T]he residual functional capacity analysis must say enough to enable a review of whether the ALJ considered the

totality of the claimant's limitations."). On remand, the ALJ should explain how the RFC accommodates Plaintiff's cognitive tests and holding a job that requires reading at a minimum rate of 95-120 words per minute.

**4.2. Mental limitations assessed per SSR 96-8p**

The RFC limited Plaintiff to simple tasks because of her "moderate limitations in concentrating, persisting, or maintaining pace, and mild limitations in the other broad areas of mental functioning." (Tr. 26.) Plaintiff argues that limiting her to simple tasks does not sufficiently account for these limitations. (ECF No. 18 at 11.)

An RFC may adequately account for a moderate limitation in concentration, persistence, and maintaining pace when it limits a plaintiff to simple, routine, and repetitive tasks. *Cain v. Bisignano*, 148 F.4th 490, 498–99 (7th Cir. 2025). However, an ALJ should still explain how he accounted for conflicting doctors' opinions on a plaintiff's ability to complete simple tasks. *See Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009) (instructing ALJs to explain how conflicts between medical opinions were resolved).

An ALJ must explain a medical opinion's supportability and consistency when articulating how he assigned weight to conflicting medical opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Stating that an opinion is not well supported by medical evidence and is inconsistent with other evidence meets the supportability and consistency burden, respectively. *Liapis v. Bisignano*, 180 F.4th 946, 951 (7th Cir. 2026) (citing 20 C.F.R. § 404.1520c(b)(2)).

State agency psychological consultants opined that Plaintiff has moderate limitations in concentration, persistence, and maintaining pace. (Tr. 26.) The ALJ found the state agency psychological consultants persuasive because their recommendations are proportional to the ALJ's paragraph B analysis. (Tr. 26.) The paragraph B analysis suggested that Plaintiff's allegations of her mental limitations are inconsistent with other evidence, including her self-reported daily activities, medical provider notes about her mental abilities, and the fact that she could follow three-step commands. (Tr. 20.) Although the ALJ did not use the word "inconsistent," the qualifier "on the other hand" is sufficient to mean that the record evidence conflicts with Plaintiff's reported mental limitations.

The ALJ limited Plaintiff to completing only simple tasks to account for the moderate limitations found by the state agency consultants. (Tr. 26.)

Plaintiff's treating physician opined that Plaintiff would constantly experience symptoms that interfered with her ability to complete simple tasks—an opinion that conflicts with the state agency consultants. (Tr. 364.) The ALJ did not explain why this opinion was unpersuasive; he only explained why the treating physician's opinion as a whole was unpersuasive—specifically, because it contained conclusory statements that were unsupported by objective medical evidence and relied on subjective statements. (Tr. 26.) This fails to construct a logical bridge from the evidence to the outcome because the ALJ failed to specifically mention why the treating physician's opinion that Plaintiff

was limited to simple tasks was unpersuasive. *See Liapis*, 180 F.4th at 952 (failing to provide analysis as to why a medical opinion is unsupported does not build a logical bridge between the evidence and conclusion). The ALJ discussed why Plaintiff's treating physician's opinion about Plaintiff's pain symptoms is inconsistent with record evidence. (Tr. 26–27.) But he never similarly assessed Plaintiff's treating physician's opinion that Plaintiff could not consistently complete simple tasks—or even mentioned this part of his opinion at all.

Failing to construct a logical bridge between the evidence and conclusion is reversible error. On remand, if the ALJ concludes that Plaintiff's treating physician's opinion that she would be unable to complete simple tasks is unpersuasive, he should explain why he reached that conclusion.

### 4.3.Subjective allegations

Plaintiff argues that the ALJ did not assess her subjective symptoms of pain and difficulty with mental processes as directed by SSR 16-3p. (ECF No. 18 at 16.) Specifically, Plaintiff argues that the ALJ did not sufficiently support his conclusion that objective evidence of severe impairments did not exist. (*Id.* at 16.)

Subjective symptoms cannot be disregarded solely because the objective medical evidence does not support the severity of symptoms reported by the claimant. Social Security Ruling 16-3P: Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, 2016 SSR LEXIS 4, at *5 (March 16, 2016) [hereinafter SSR 16-3p].

The medical evidence in the record supports some impairments. After conducting a physical exam of Plaintiff's hands, a doctor diagnosed her with ill-defined myofascial pain syndrome and carpometacarpal arthritis. (Tr. 1463.) X-rays confirmed arthritis in the thumbs. (Tr. 1469.) Plaintiff's mental examinations were a mixed bag, with some results suggesting mental processing impairments and others suggesting fair mental processes. (Tr. 1437.) Although these mixed results are inconclusive, it is not clear how the ALJ weighed this evidence. (Tr. 25.)

Plaintiff also alleges that the ALJ failed to sufficiently explain how the SSR 16-3p factors conflict with Plaintiff's alleged symptoms. (ECF No. 18 at 17.) SSR 16-3p directs the consideration of factors, including daily activities, treatment, and medication, when determining the severity of a claimant's subjective symptoms. SSR 16-3p, at *7.

The Commissioner argues that the ALJ "considered" Plaintiff's daily activities and determined they were inconsistent with her subjective symptoms. (ECF No. 25 at 5.)

The ALJ did not specifically say that Plaintiff's activities of daily living were inconsistent with her alleged pain. He mentioned that Plaintiff walks her dogs, attends physical therapy appointments, and at one point cared for her father during his cancer treatment. (Tr. 25–26.) But the ALJ did not explain how he considered these activities to be inconsistent with Plaintiff's reported symptoms. "Courts repeatedly have instructed ALJs that, without more, such evidentiary summaries are not adequate to support a

symptom analysis or an RFC assessment." *Seabolt v. Berryhill*, No. 2:17-CV-358, 2019 WL 968063, 2019 U.S. Dist. LEXIS 31760, at *6 (N.D. Ind. Feb. 28, 2019).

An explanation is especially useful regarding Plaintiff's caretaking because she reported that she had not been her father's caretaker for some time and all she did as his primary caretaker was clean his feeding tube. (Tr. 61.) Cleaning a feeding tube is unlike full-time work. *See Beardsley*, 758 F.3d at 838–39 (contrasting completing minimal daily activities as a caregiver with full-time employment).

Similarly, the ALJ did not say that the treatment Plaintiff received conflicted with her subjective allegations of pain. The Commissioner argues that the ALJ "considered" that Plaintiff's treatment for her mental impairments was not "extraordinary." (ECF No. 25 at 4.) The ALJ mentioned that Plaintiff was never hospitalized for her mental health condition and that she had not been to therapy recently. (Tr. 25). But Plaintiff's mental impairments are potentially broader than symptoms psychiatric treatment can address; she has also reported problems with organization, forgetfulness, concentration, and attention. (Tr. 53, 91, 104, 299.) Post-concussion syndrome can cause these symptoms. *See Post-Concussion Syndrome*, Cleveland Clinic (Apr. 11, 2023), https://my.clevelandclinic.org/health/diseases/24900-post-concussion-syndrome. An emergency room doctor diagnosed Plaintiff with post-concussion syndrome six days after her car accident, when she went to the emergency room because of intensifying pain and vomiting from a headache and slurred speech. (Tr. 650–55.)

The ALJ never explained how not being hospitalized or not recently attending therapy conflicted with Plaintiff's allegation of disabling pain from post-concussion syndrome—which includes severe migraines. (Tr. 275; *see also Thomas A.B.H. v. Comm'n Soc. Sec.*, No. 23-CV-1150, 2024 WL 4225538, 2024 U.S. Dist. LEXIS 168688, at *5 (S.D. Ill. Sept. 18, 2024) (recognizing that a claimant's treatments for post-concussion syndrome included occupational therapy, physical therapy, and speech therapy).) Treatment plans for post-concussion syndrome migraines may take many different forms because the syndrome itself is incurable. *Post-Concussion Syndrome*, Cleveland Clinic (Apr. 11, 2023), https://my.clevelandclinic.org/health/diseases/24900-post-concussion-syndrome (including physical therapy, speech-language therapy, and exercise as possible treatments). An ALJ cannot summarily conclude that treatment is conservative without explanation. *William M. v. Saul*, No. 19-CV-50043, 2020 WL 4676934, 2020 U.S. Dist. LEXIS 144587, at *7 (N.D. Ill. Aug. 12, 2020). Here, the ALJ only explained how treatment that would be expected to address Plaintiff's depression and anxiety was conservative but did not explain how Plaintiff's treatment for her other symptoms was conservative. This explanation is especially lacking because the ALJ earlier acknowledged that Plaintiff had been attending physical therapy and speech therapy. (Tr. 24; *see also* Tr. 458 (Plaintiff attended multiple speech therapy appointments for post-concussion syndrome).)

The ALJ mentioned that Plaintiff reported her migraines improved with medication. (Tr. 23.) Contrary to the Commissioner's argument, this did not include any

explanation about how the ALJ considered this evidence. (ECF No. 25 at 5.) "Merely listing a claimant's pain medications, however, does not explain how the ALJ considered them unless the ALJ draws some connection between the medications and the symptom evaluation." *Jason S. v. Saul*, No. 18-C-8371, 2020 WL 291381, 2020 U.S. Dist. LEXIS 9442, at *5 (N.D. Ill. Jan. 21, 2020). Stating only that Plaintiff's pain improved with medication before concluding that Plaintiff is not disabled fails to build a logical bridge between the evidence and the conclusion.

On remand, the ALJ should consider whether Plaintiff's daily activities, treatment, and medication conflicted with Plaintiff's allegations of disabling pain. If he concludes they do, he should explain why he reached that conclusion.

**5. Conclusion**

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and, pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further proceedings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of September, 2026.

William E. Duffin

WILLIAM E. DUFFIN
U.S. Magistrate Judge